Kelly O. v Raymond O. (2004 NY Slip Op 51645(U))

[*1]

Kelly O. v Raymond O.

2004 NY Slip Op 51645(U)

Decided on November 12, 2004

Family Court, Richmond County

Porzio, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 12, 2004

Family Court, Richmond County
KELLY O., Petitioner
against
RAYMOND O., Respondent
V-XXX/XX

Ralph J. Porzio, J.
PROCEDURAL HISTORY
The parties, Kelly O. and Raymond O., were divorced on February 3, 2003. The Judgement of Divorce granted Kelly O. (hereinafter referred to as the Mother) sole custody of the child, Oliver, date of birth July 5, 1999. Raymond O. (hereinafter referred to as the Father) was granted visitation.
Also included in the Judgement of Divorce was a relocation clause restricting the Mother from moving the child's residence outside of fifty (50) miles from the marital residence without consent of the Father or further court order. 
On October 27, 2003 the Father filed a Petition for a Violation of a Custody/Visitation Order against the Mother in Richmond Family Court. The matter was transferred to the Court Attorney Referee. On February 11, 2004 the parties entered into a stipulation settling the matter and establishing a visitation schedule. On April 19, 2004 the Father filed another Petition for a Violation of a Visitation Order. The matter was adjourned to May 21, 2004.
On April 26, 2004 Mother filed a Petition for a Writ of Habeas Corpus for the immediate return of the subject child alleging the Father had failed to return the child after visitation. A Writ was issued and the matter was adjourned to April 27, 2004. On April 27, 2004 the Writ was satisfied and the child returned to the Mother.
On May 21, 2004 a temporary Order of Visitation was entered wherein the Mother was not to permanently relocate the child without court approval outside the parameters set forth in the Judgement of Divorce.
The matter was adjourned to June 30, 2004.
On May 27, 2004 the Mother filed an Order to Show Cause requesting permission to relocate the child to New Orleans, Louisiana. The matter was adjourned to June 4, 2004 wherein the parties appeared and a Law Guardian was assigned. The Father declined extended visits for the entire [*2]month of June.
On June 21, 2004 the Father filed a Cross-Petition and Answer requesting Mother's application to relocate be denied. Father also petitioned the Court for a change in custody.
On June 30, 2004 the parties appeared and the matter was adjourned to August 5, 2004.
On July 27, 2004 the Father filed a motion requesting the Court Attorney Referee recuse herself. That motion was granted and on August 5, 2004 the matter appeared before this Court.
After an in camera with the child and three afternoons of testimony this Court rendered its decision.
 FACTS
The undisputed facts are that the parties were divorced on February 3, 2003. The Judgement of Divorce granted full custody to the Mother, visitation to the Father, and a restriction on the Mother relocating the child outside of fifty (50) miles from the marital residence.
The Mother, the Father and two witnesses for the Father testified.
The Mother testified that she had recently signed a lease for a residence in New Orleans, Louisiana and that the child was registered in a private school in New Orleans. She further testified that she gave up her apartment in Manhattan in July, 2004. However, the Mother refused to acknowledge that she had relocated to New Orleans with the child or violated any prior court orders stating, "Because, your Honor, I haven't permanently relocated yet. We have family and we have a home." TR 9/20/04 p. 65, lines 1 - 3. She further stated, "We are not really living there." TR 9/21/04 p. 61, lines 18 - 19. When this Court questioned, "Even though that you rented an apartment, your child goes to St. Rita's in Louisiana, and you rely on your sister and you're not really living there?" The Mother replied, "Not permanently. We have been staying there temporarily, yes." TR 9/20/04 p. 88, lines 5 - 10.
 The Mother testified that she had offered to the Father an alternate visitation schedule should he consent to the relocation. The present visitation schedule was visitation with the Father on alternate weekends. The Mother had been bringing the child to New York on Fridays and returning to New Orleans on Monday morning. At a minimum the child was missing four days of school a month. The Mother suggested to the Father to modify visitation from every other weekend to one four day weekend a month. The child would continue to miss a minimum of three - four days of school a month. The Mother further offered to continue with the alternating holidays and in addition to the summer vacation the Father could have visitation with the child for the entire month of June. The Father declined.
The Mother testified at length detailing her trips with the child to and from New Orleans including the duration of the flight, cost of the flights and the transportation to and from the airport. Specifically, she and the child had been taking a Friday, 10:30 a.m. flight from New Orleans arriving in John F. Kennedy Airport, New York at approximately 2:30 p.m. They would then take public transportation into Manhattan which would take approximately one hour. The Father's pick up time is approximately 5:30 p.m. at 38th Street and Lexington Avenue. From 3:30 p.m. to 5:30 p.m. the Mother and child would essentially "kill time".
The Mother then spends the weekend with some friends. She picks up the child on Sunday at 6:00 p.m. in Staten Island. They go back to Manhattan and spend the night in a hotel. On Monday they wake up around 5:00 a.m. to take a 7:55 a.m. flight back to New Orleans. The Mother testified that even she believed the traveling was a lot for the child.
[*3] The Mother further testified that she was raised in New Orleans and has extended family and support in New Orleans.
While living in New York, the Mother and the child resided in a studio apartment in Manhattan. She testified that in New Orleans she and the child reside in a two bedroom apartment.
The Mother testified that she had a job prospects in New Orleans with an annual salary of approximately $40,000.00. She also alleged that this salary was approximately $5,000.00 less than she had earned in Manhattan as an administrative assistant before resigning. However, she stated that her reason for resigning was her fear of imminent termination of employment for excessive personal days.
The Mother testified that should her request to relocate be denied she was researching areas in upper Westchester County, New York.
Finally, the Mother testified that she has always been the primary caretaker of the child.
The Father testified that he feared he would not see his child and the Mother would thwart visitation. When the Mother requested that pick up and drop off be altered because she had moved to Manhattan the Father would not waiver from the terms of the divorce judgment. The Father testified "I expected her to live to the agreement that she swore to and signed." TR. 9/21/04 p. 99, lines15 -16. When the Mother requested the Father have additional visitation during the child's spring recess in 2004 because she was having back surgery the Father refused stating, "Because I believe that she needs to, or we need to act as adults, and adhere to the visitation schedule that we have..." TR 9/22/04 p. 58, lines 18 - 19.
The Father testified that there had been many missed visits. However, since the Mother had requested to relocate visits had not been missed. He further testified that when the child arrives from New Orleans he is very tired and does not recuperate until after a nap on Saturday.
The Father also testified as to extended family and support in New York.
Both the Mother and the Father testified at length about the acrimonious financial settlement of the divorce and the ongoing dispute over the child support. Both the Mother and the Father felt that the financial settlement was unfair.
The Father called two witnesses, Mr. Scott P. Director of the G. S. and Ms. Leila R. of the Early Learning Center. The child's school records from the G. S. were entered into evidence. The Mother had listed as a contact person for the child her then boyfriend whom she listed as the child's stepfather. The Mother testified she listed her boyfriend as the child's stepfather because at the time she was planning on marrying him. The Mother further testified that they are no longer involved.
Ms. Leila R. testified that the child was enrolled at the Early Learning Center from August 2000 to July 2004. The child's records from the Early Learning Center were entered into evidence.
The Mother and the Father each testified that their relationship had become hostile and combative and testified extensively about the parties ongoing disputes regarding visitation. Specifically, each party testified as to missed visitations and transportation to and from visitation. ISSUES PRESENTED
This Court determined the following issues: 1) whether it was in the best interests of the child to relocate to New Orleans, Louisiana; and 2) in the alternative, whether a change of custody [*4]to the Father was in the best interests of the child.
 DISCUSSION
Previously, when determining the issue of relocation courts would apply a three tiered test. The first step addressed whether the non-custodial parent would be denied meaningful access to the child should the move be granted and, if so, the custodial parent needed to show exceptional circumstances to justify the move. The courts would then consider the child's best interests. In 1996 the Court of Appeals dispensed with the three tiered test and held that "each relocation request must be considered on its own merits with due consideration of all the relevant facts and circumstances and with predominant emphasis being placed on what outcome is most likely to serve the best interests of the child." Tropea v. Tropea, 87 NY2d 727 at 739, 665 NE2d 145 at 150, 642 NYS2d 575 at 580. The Court further held that in applying the three tiered test the courts were unable to consider all the relevant factors and that "in all cases, the courts should be free to consider and give appropriate weight to all of the factors that may be relevant to the determination." Id at 739, 581, 151.
Factors to be considered include, but are not limited too, the noncustodial parent's loss of access to the child and the potential of a substitute visitation schedule which is both feasible and provides the noncustodial parent with meaningful access to the child; the good faith of the parents in requesting or opposing the move; the child's quality of lifestyle; and the child's relationship with extended family. Id.
Finally, the Court of Appeals held that, based on all the evidence, whether it has been established by a preponderance of the evidence that relocation would be in the child's best interest. Id.
Where the proposed relocation provides education, emotional and economic benefits for the child, the relocation should be granted. Aziz v. Aziz 779 NY2d 539 (2nd Dept. 2004)
Looking closely at the case at hand it is clear that the parties' relationship has deteriorated so much that they are unable to reach an agreement on the simplest matters without resorting to involving their lawyers and/or continued litigation. 
The child has extended family and support in both New Orleans and in New York. 
The Father's position is clear: he fears the alienation of his son should the Mother relocate to New Orleans. 
When looking at all the relevant facts and circumstances of this matter this Court weighed heavily the Mother's violation of the prior court orders directing her not to relocate and the failure of the Mother to offer a feasible visitation plan. The Mother violated the Judgement of Divorce and Orders of this Court by relocating to New Orleans. Furthermore, although the Mother had signed a lease and registered the child in school in New Orleans she refused to acknowledge that she had relocated simply stating that she has always gone to New Orleans and has always had a home in New Orleans.
The Mother's alternate visitation plan was not feasible. The subject child would continue to miss a minimum of three (3) to four (4) days of school a month. Both the Mother and the Father agreed that the travel schedule is onerous for a child of such tender years. Furthermore, this Court credits the Father's testimony regarding the child's physical condition after traveling from New Orleans.
[*5]
Finally, the Law Guardian opposed the Mother's application to relocate to New Orleans arguing the child's quality of life would be equal living either in New York or New Orleans. This Court finds that the child's quality of life would be equal either living in New York or New Orleans. The Mother testified that she was living beyond her means in New York. However, looking closely at the Mother's financials and the proposed earning in New Orleans, she and the child would enjoy the same standard of living as she would in New York.
This Court finds that should the Mother relocate the Father would be denied meaningful access to the child and that the alternate visitation schedule offered by the Mother is not feasible and extremely arduous on the child. The Mother has already violated Orders of this Court and the Supreme Court specifically directing the Mother not to relocate. The prior visitation orders were not followed and this Court credits the Father's testimony that it was not until the proposed relocation did visitation occur pursuant to the schedule.
For the above stated reasons, this Court finds that it is not in the best interests of the child to relocate to New Orleans. Further, this Court finds that it is in the best interests of the child to remain in the custody of the Mother.
 FINDINGS
1.)This Court finds that it would be in the best interests of the child to deny the Mother's application to relocate to New Orleans, Louisiana.
2.)This Court finds that it is in the best interests of the child to reside with the Mother.
3.)Visitation continues unless further agreement by counsel.
DECISION
Mother's application to relocate is denied. Father's application for a change in custody is denied. Mother is not to relocate outside of fifty (50) miles from the marital residence. Visitation continues unless further agreement by counsel.
This constitutes the decision and order of the Court.
E N T E R:
RALPH J. PORZIO
Family Court Judge
Dated: Staten Island, New York
November 12, 2004